UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS M. DAMIANO and RITA DAMIANO,

                            Plaintiffs,

           vs                              5:04-CV-1012

CITY OF AMSTERDAM, NEW YORK; and
GREGORY J. CULICK, ARIEL SANTIAGO,
OWEN FUHS, and DEAN PALMIERI, Each
Individually, and as an Agent and/or Employee
and Police Officer of the City of Amsterdam,
and the City of Amsterdam Police Department,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

TOBIN & DEMPF                  KEVIN A. LUIBRAND, ESQ.
Attorneys for Plaintiffs
33 Elk Street
Albany, New York 12207

PENNOCK BREEDLOVE & NOLL        TRACY M. LAROCQUE, ESQ.
Attorneys for Defendants              CARRIE McLOUGHLIN NOLL, ESQ.
Building 4, 2nd Floor
1407 Route 9, Nine North
Clifton Park, NY 12065

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiffs Thomas ("plaintiff" or "Damiano") and Rita Damiano (collectively "plaintiffs")

commenced this action against The City of Amsterdam, New York ("City" or "Amsterdam"),

Officers Gregory Culick ("Officer Culick"), Owen Fuhs ("Officer Fuhs"), Ariel Santiago ("Officer

Santiago"), and Dean Palmieri ("Officer Palmieri"). The plaintiffs bring the following causes of

action: (1) an action under 42 U.S.C. § 1983 for violations of plaintiff's rights to due process of law, right to freedom from unlawful search and seizure, right to freedom from false arrest; right to freedom from unlawful imprisonment; and right to freedom from malicious prosecution; (2) municipal liability for unconstitutional custom, practice or policy (3) municipal liability for failure to train; (4) municipal liability for failure to supervise; (5) pendent state law claim for false arrest; (6) pendent state law claim for malicious abuse of process and malicious prosecution; and (7) pendent state law claim for loss of consortium.

Defendants moved for summary judgment. Plaintiffs opposed the motion.  Oral argument was heard in Albany, New York on June 23, 2006, and decision was reserved.

## II.  <u>FACTS</u>

The following facts are undisputed unless otherwise noted.

 In early May 2002, the Amsterdam Police Department received information that Alex Zayas ("Zayas") was selling cocaine in Amsterdam and the surrounding area.  Detective Lieutenant Tom DiMezza (Lt. DiMezza) and Detective Michael Cole was assigned as the agent.

The investigation included a review of Zayas's subpoenaed cell phone records, an eavesdropping warrant, and physical surveillance of Zayas when information indicated he was participating in a narcotics transaction.  Based on this information, Amsterdam police obtained arrest warrants for Zayas, Raul Riviera, Miguel Quinones, Mark Majewski, and Bradley Hill.  In addition, the police obtained search warrants for each of their homes.  Prior to June 30, 2002, the plaintiff was not a target of the investigation.

Early on the morning of June 30, 2002, Amsterdam Police executed the arrest and search warrants for Zayas and his home.  Officers entered Zayas's home on a no-knock

warrant, arrested Zayas, and transported him to the police station.  Police continued to

search the house and obtained the cooperation of Zayas's house-mate of ten years, Janice

Ross ("Ross").  Ross directed police to locations in the home where she believed Zayas kept

the drugs and drug money.  While at the home, Officer Culick took a statement from Ross.

She told him that she knew Zayas sold cocaine.  She then stated that Zayas told her that the

plaintiff purchased cocaine from him and that the plaintiff's telephone number appeared on

his home telephone's caller-ID.  Officer Culick then took photographs of the telephone's

caller ID display and informed Lt. DiMezza that Ross's statement had implicated the plaintiff.

Simultaneous to the search of the house, Zayas was being questioned at the

Amsterdam Police Department station by New York State Police Investigator Israel Torro

("Inv. Torro") and Officer Fuhs.  The officers claim that Zayas made a statement admitting

that he sold drugs to the plaintiff.  Zayas has sworn in an affidavit that he made no such

statement to the police.  (Luibrand Aff. Ex. AA at 18-19.)

Inv. Torro and Officer Fuhs relayed to Lt. DiMezza that Zayas had named the

plaintiff as one of the individuals to whom he sold cocaine.  Lt. DiMezza determined that the

plaintiff should be brought in for questioning.  He then dispatched Officers Santiago and

Palmieri to the plaintiff's home.  They were not told why the plaintiff was being sought for

questioning.

When Officers Santiago and Palmieri arrived at the plaintiff's house, they told him

that they needed his help with a matter and asked if he would be willing to go with them to

the police station.  Since he was preparing his home for an event later that day, the plaintiff

initially rebuffed the officers' request.  The officers persisted.  They asked him "as a friend" to

"help them out."  (Luibrand Aff. Ex. R at 38.)

Plaintiff relented and agreed to travel with these defendants in an unmarked car to the station, which he got into himself and rode in the front seat. Officers Santiago and Palmieri brought the plaintiff into an interview room at the station and then left him and had no further part in the interrogation.

Plaintiff was interviewed by Inv. Torro, Officer Fuhs, Amsterdam Police Detective John DiCaprio ("DiCaprio"), and a fourth, unidentified officer. Additionally, Officer Culick intermittently participated in the interrogation. The officers confronted Damiano with the alleged statement of Zayas and the appearance of his phone number on Zayas's home phone. Plaintiff, who is a stone mason, explained that Zayas had inquired about having stone work done on his home and plaintiff had called with a price quote.

Damiano in his interview told the officers that he had no involvement with Zayas's drug business. (Luibrand Aff. Ex. R at 71, 109-110). He attempted to end the interview but when he said he wanted to leave Officer Fuhs told him that he was not free to go and that he was under arrest. However, the defendants claim that the plaintiff admitted in the interview to having purchased cocaine from Zayas. It was on this alleged admission that Inv. Torro, Officers Fuhs and Det. DiCaprio went to Officer Culick. Culick prepared a felony complaint charging plaintiff with Conspiracy in the Second Degree. He then consulted with District Attorney Judd Conboy ("D.A.") and Lt. DiMezza who, relying on Ross's statement, Zayas's alleged statement implicating plaintiff, and plaintiff's alleged confession, agreed that there was sufficient evidence to charge Damiano.

Plaintiff was then formally placed under arrest and arraigned. However, the charges were never brought before a Grand Jury and an indictment was never issued. After nearly two years, the charges were dismissed on April 29, 2004, for failure to prosecute.

The plaintiffs then brought this action.

## III.  DISCUSSION

### A.  Motion for Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  Facts, inferences therefrom, and ambiguities must be viewed in the light most favorable to the non-movant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the non-movant.  Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. 2510;  Matsushita Elec. Indus. Co., 475 U.S.  at 587, 106 S. Ct. at 1356.

### B.  Due Process

Defendants have addressed both substantive and procedural due process.  Plaintiff responded that his claim was for procedural due process, based upon his arrest without probable cause.  He then went on to discuss his loss of liberty when he was arrested, in the context of a Fourth Amendment unreasonable seizure.  However, plaintiff also notes in a

footnote that arguably the facts in his case support a substantive due process claim.  It is well settled that where the claim is that an arrest was made without probable cause, the Fourth Amendment, and not the due process clause, provides the basis for a constitutional violation.  See Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994); Singer v. Fulton County Sheriff, 63 F.3d 110, 115 (2d Cir. 1995) (restating the principle set forth in Albright that "the Fourth Amendment provides the source for a § 1983 claim premised on a person's arrest").

Plaintiff's claim based upon his arrest without probable cause is analyzed below in accordance with Fourth Amendment jurisprudence.  Accordingly, defendants are entitled to dismissal of the due process claims as a matter of law.

### C.  **False Arrest**

A false arrest claim brought under § 1983 shares the same elements as the state law claim.  Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996).  Those elements are:  (1) defendants intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; (4) the confinement was not otherwise privileged.  Broughton v. State, 37 N.Y.2d 451, 458 (N.Y. Ct. App. 1975).

Turning to the first element of a false arrest claim, the plaintiff must present evidence that the defendants confined him and, because this is a § 1983, action that the confinement constituted a seizure within the meaning of the Fourth Amendment.  Posr v. Doherty, 944 F.2d 91, 96-97 (2d Cir. 1991).  There is no requirement that the arrest be formal under either New York law or § 1983.  Id. at 96.  Rather, a plaintiff may show intent to confine by presenting evidence that "the defendant must have either:  (1) confined or intended to confine the plaintiff; or (2) affirmatively procured or instigated the plaintiff's arrest."  King v. Crossland

Savings Bank, 111 F.3d 251, 256 (2d Cir. 1997) (finding no proof of intent where private company did not provide any information to police about plaintiff nor did plaintiff produce evidence that defendant requested plaintiff's arrest).  Such a confinement is a seizure within the meaning of the Fourth Amendment "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (Stewart J., concurring).

Plaintiff must also present evidence that he was aware of the confinement.  Under New York law, false arrest and false imprisonment are dignitary torts.  Parvi v. City of Kingston, 41 N.Y.2d 553 (N.Y. Ct. App. 1977).  Therefore, the plaintiff is required to show that he was aware of the confinement and was harmed by it.  Id.  Additionally, there can be no claim for false arrest where a plaintiff voluntarily agrees to the confinement.  Hook v. State, 15 Misc. 2d 672, 676 (N.Y. Ct. Cl. 1958) (claim for false arrest dismissed where plaintiff who knew state trooper agreed to go with him to meet investigators to discuss property theft).

Finally, a claim of false arrest under New York State law or § 1983 can not go forward if the arrest is privileged.  An arrest is privileged where probable cause for the arrest exists.  Posr, 944 F.2d at 98.  Probable cause exists "where law enforcement officials have knowledge or reasonably trustworthy information about facts and circumstances sufficient to warrant a person of reasonable caution to believe" that an individual committed the crime.  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

In this case, there are three distinct claims of false arrest against the four police officer defendants.  First, plaintiff claims that the actions of Officers Santiago and Palmieri, who were dispatched to his home with orders to ask him to come to the police station for questioning, constituted false arrest.  His second claim is that Officer Fuhs's actions during

the plaintiff's interrogation and participation in the decision to formally arrest him constituted a second false arrest. Finally, plaintiff claims that Officer Culick, who was his formal arresting officer, is also liable for false arrest. Each claim shall be analyzed in turn.

It must first be determined if the plaintiff has presented evidence that Officers Santiago and Palmieri intended to confine him or seized him. These defendants were sent to the plaintiff's home with merely the instruction that Lt. DiMezza wished to speak to plaintiff. They were given no indication of the reason why Lt. DiMezza wanted to speak with plaintiff and no advance information that there was even a possibility that plaintiff might be subject to arrest because of the questioning.

Damiano argues that constructive knowledge may be inferred because other officers were being dispatched throughout Amsterdam to execute arrest and search warrants in connection with the drug investigation. However, such an inference raises only a "metaphysical doubt" rather than a question of material fact. See Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. Plaintiff has presented no evidence that contradicts the facts presented by the defendants that their purpose was not to arrest him or confine him but merely to ask him to voluntarily go to the police station. Because there is no evidence that these defendants intended to confine plaintiff, Damiano may only satisfy the first element if he can raise a question of material fact that the defendants took affirmative steps to procure his arrest.

Plaintiff, however, is unable to present evidence that the officers "affirmatively procured or instigated the plaintiff's arrest." King, 111 F.3d at 256. There is nothing in the record to indicate that these officers had any involvement in plaintiff's interrogation or formal arrest. Rather, the only connection to plaintiff's arrest that has been established by the

- 8 -

record is that these two defendants brought him to the police station where he was later arrested.  The record also establishes that the defendants brought plaintiff to the station under circumstances where the plaintiff himself stated he did not feel that he was under arrest.  There is no evidence that these defendants requested that plaintiff be arrested or that they passed on any information to the other officers that led to plaintiff's arrest.  Therefore, plaintiff has not presented evidence that raises a question of fact for a jury as to whether Officers Santiago and Palmieri intended to confine him.

However, even if the officers did intend to confine Damiano, he must also raise a question of material fact that he was aware of the confinement.  Here, plaintiff stated that during the time he was with Officers Santiago and Palmieri at his home and when he rode with them to the police station he did not feel that he was under arrest.  He also stated that he did not feel that his freedom had been restricted in any way.  Therefore, plaintiff has also failed to present evidence that he was aware of a confinement.

Finally, it may be considered whether the plaintiff's evidence is sufficient for a reasonable jury to find that he did not consent to the confinement.  In the present case, there is no evidence that the officers used undue pressure to compel Damiano to go with them to the station.  Damiano himself stated he felt no compulsion or fear at any point while he went with the officers.  In fact, he initially told the officers he was too busy to go but they persuaded him by simply asking again for his help "as a friend" to them.  (Luibrand Aff.  Ex. R at 39.)

Plaintiff claims that these words and the officers' failure to articulate the reason for his being summoned constituted deceit and trickery.  He argues that this deceit and trickery nullifies the voluntariness of his decision to with the officers to the station.  However, Damiano never asked the officers why he was wanted at the station and therefore, the

officers never had a chance to present him with a deceitful answer.  Id.  Whether it was a sense of friendship, civic duty, or merely curiosity that ultimately prodded him to go, the plaintiff has presented no evidence that his decision to go with the officers was involuntary. Therefore, there is no triable question of material fact on the issue of whether defendants took plaintiff to the station without his consent.

Therefore, because the plaintiff has not presented evidence to create an issue of material fact for a jury that these defendants intended to confine him, that he was aware of the confinement, and that he did not consent to it, his false arrest claim, under either state law or § 1983, fails.

Summary judgment must be granted to defendants Officers Santiago and Palmieri.

Looking next to plaintiff's false arrest claim against Officer Fuhs, plaintiff has presented evidence which raises issues of material fact for a jury.  Plaintiff's sworn deposition alleges that Officer Fuhs refused to terminate questioning upon plaintiff's request.  In his sworn deposition he also states that Officer Fuhs told him that he could not leave the interrogation room because he was under arrest.  (Luibrand Aff. Ex. R at 50).  Additionally, the record indicates that Officer Fuhs passed on information to Officer Culick that directly led to plaintiff's formal arrest.  Under these circumstances the plaintiff has raised questions of material fact as to the first three elements of the tort.

However, Officer Fuhs argues that there was probable cause for the arrest so that it was privileged and he can not be liable.  See Posr, 944 F.2d at 98.  Officer Fuhs argues that "the facts leading to the arrest are not in dispute" and, therefore, the question of whether probable cause exists is one of law for the court as opposed to a factual dispute appropriate for a jury.  (Defs.' Mem. at 8.)  Despite the defendant's characterization of the material facts,

the plaintiff does raise questions of material fact that are appropriately to be answered by a jury.

The police determined that probable cause existed to arrest plaintiff based on statements from Ross, Zayas, and the plaintiff himself.  However, plaintiff in his sworn deposition and Zayas in a sworn affidavit deny that either made the statements to the police that implicated plaintiff in the drug-trafficking conspiracy.  The summary judgment standard requires that evidence, including all credibility determinations, must be viewed in the light most favorable to the plaintiff.  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (1986).

Therefore, the only undisputed evidence Officer Fuhs and Officer Culick had at the time of Damiano's arrest was Ross's statement and the appearance of the plaintiff's telephone number on Zayas's home phone.

This scant evidence can not lead to a decision as a matter of law that there were sufficient facts or circumstances for law enforcement officials of reasonable caution to believe that the plaintiff committed the alleged offense.  See Golino, 950 F.2d at 870.  Therefore, plaintiff has raised a triable issue of fact for a jury on the question of whether probable cause existed for the arrest.

The plaintiff's last claim for false arrest is against Officer Culick. Officer Culick was the officer who formally arrested the plaintiff.  He does not challenge the plaintiff's claim on the first three elements. Rather, like Officer Fuhs, he argues the arrest was privileged because probable cause existed.  However, for the foregoing reasons, the plaintiff has presented evidence that raises a triable question of fact for a jury on whether Officer Culick (as well as Fuhs) had probable cause to arrest the plaintiff.

Therefore, Officers Culick and Fuhs's motion for summary judgment on the state law and § 1983 claims of false arrest must be denied.

### D. Malicious Prosecution

Next the defendants seek summary judgment on the plaintiff's claim of malicious prosecution under § 1983. For a plaintiff's claim of malicious prosecution to survive a motion for summary judgment, he must present facts sufficient to show that: "(1) defendants initiated a prosecution against the him; (2) the prosecution was initiated without probable cause; (3) the proceeding was commenced with malice; and (4) the proceedings terminated in the plaintiff's favor." Ricciuti v. New York City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). In order to assert a claim of malicious prosecution under § 1983, plaintiff must also show that he suffered a "sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights." Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).

To satisfy the first element, initiation, a plaintiff must show that the officers brought formal charges and caused him to be arraigned. Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994). The Second Circuit has held that when an officer passes on false information that is used by the law enforcement official who files the formal charge, that act may constitute initiation. Ricciuti, 124 F.3d at 130.

Plaintiff must also show that probable cause for the arrest which led to the prosecution was lacking. Id. "Where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

The third element is actual malice.  The plaintiff is not required to  "'prove that the defendant was motivated by spite or hatred . . . [r]ather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive.'" Rounseville v. Zahl, 13 F.3d 625, 630 (2d Cir. 1994) (quoting Nardelli v. Stamberg, 44 N.Y.2d 500, 502-03 (N.Y. Ct. App. 1978)).  Actual malice is rarely established by direct evidence and therefore it may be shown through circumstantial evidence.  Id.   In New York, the lack of probable cause and malice are considered closely related elements and therefore the existence of malice may be inferred from a lack of probable cause.  Id. at 631.  Therefore, on a motion for summary judgment if there is a question of material fact as to probable cause, then there is also a question of material fact as to the existence of malice.

Regarding the fourth element, "[t]he requirement that a plaintiff show . . . a favorable termination is designed principally to ensure against inconsistent judgments, and to avoid parallel litigation as to questions of probable cause."  Murphy, 118 F.3d at 948.  The inquiry is thus focused on whether the termination of the proceedings indicates a plaintiff's innocence. Id.

Finally, in order for the plaintiff to bring a malicious prosecution claim under § 1983 he must show a sufficient post-arraignment liberty restraint to implicate" his Fourth Amendment right to be free from unlawful seizures.  Rohman, 215 F.3d at 215.

As with plaintiff's false arrest claim, because each of the defendant officers played distinct roles in this matter, the claims against each are analyzed in turn.

Looking first to Officers Santiago and Palmieri, the plaintiff must establish that a question of material fact exists as to whether these defendants initiated proceedings against him.  Plaintiff does not present any evidence that either officer formally filed charges against him  or constructively arrested plaintiff.  See Cook, 41 F.3d at 79.  Nor is there evidence that

they passed on false information to their fellow officers calculated to result in his prosecution. See Ricciuti, 124 F.3d at 130.  Because the plaintiff has not presented evidence that raises a question of fact on whether Officers Santiago and Palmieri initiated a prosecution against him, his claim of malicious prosecution against them cannot be sustained.  Therefore, Officers Santiago and Palmieri's motion for summary judgment on this claim must be granted.

Officer Fuhs also argues that he did not initiate the proceedings against Damiano because he did not file the formal complaint and therefore summary judgment is warranted. However, Officer Fuhs was present at the questioning of both Zayas and Damiano.  He told Lt. DiMezza and Officer Culick that Damiano had confessed and that Zayas had implicated the plaintiff as a co-conspirator.  It was this information that became the basis upon which the decision to arrest and prosecute Damiano was made.  Therefore, a reasonable jury could find that Officer Fuhs did initiate the prosecution of the plaintiff.  See Ricciuti, 124 F.3d at 130.

Officer Fuhs is joined by Officer Culick, who did file the formal felony complaint, in arguing that plaintiff's claim against them must fail because he has not presented evidence that there was a lack of probable cause or that they acted with malice.  As previously discussed, plaintiff, through his deposition and Zayas's affidavit, has presented evidence that the statements the defendants attribute to him and to Zayas, may not have in fact been made.  Therefore, he raises a triable question of fact for a jury on the existence of probable cause. See Murphy, 118 F.3d at 947.

Moreover, because a lack of probable cause may be proof of malice, the plaintiff's presentation of evidence that probable cause may not have existed also satisfies as a showing of evidence of malice.  See Rounseville, 13 F.3d at 630.

Neither Officer Culick or Fuhs have argued that plaintiff cannot satisfy the fourth and fifth elements of his cause of action - favorable termination and a significant post-arrest

deprivation of liberty.  Accordingly, it is assumed for the purposes of this motion that triable questions of fact exist as to these two elements.

Therefore, Officers Fuhs and Culick's motion for summary judgment on the plaintiff's claim of malicious prosecution must be denied.

## E. Qualified Immunity

Defendants argue that summary judgment should be granted because they are entitled to qualified immunity.  A defendant is entitled to qualified immunity in any of three circumstances:  (1) if the conduct attributed him is not prohibited under federal law; (2) where the conduct is prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; or (3) if the defendant's conduct was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.  X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir.1999).  Defendants assert the defense of qualified immunity on the grounds that their determination that probable cause for the arrest existed was objectively reasonable.

The question "of whether a defendant official's conduct was objectively reasonable . . . is a mixed question of law and fact."  Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004) (citations omitted).  While "a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is a such a dispute, the factual questions must be resolved by the fact finder."  Id. (citations omitted).

Here, there are disputes about material facts relating to whether Officers Culick and Fuhs had probable cause to arrest plaintiff.  Defendants argue that the D.A.'s statement to Officer Culick is dispositive in showing that their decision to arrest plaintiff was based on probable cause and therefore was objectively reasonable.  However, the D.A. only advised the

- 15 -

defendants that arresting the plaintiff was appropriate after Officer Culick told him about the alleged confession of Damiano and the alleged statement of Zayas that implicated the plaintiff. It is therefore inappropriate to make a determination on whether qualified immunity applies in advance of a jury's determination of what the true facts are surrounding the arrest.

Therefore, the motion for summary judgment on this ground must also be denied.

### F. **Municipal Liability**

A municipality may be held liable under § 1983 only when a governmental policy or custom causes the constitutional violation at issue.   Monell v. New York City Dep't of Social Serv., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978);   Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 137 (2d Cir. 1999); Thomas v. Roach, 165 F.3d 137, 145 (2d Cir. 1999). "A municipal policy may be inferred from informal acts or omissions of supervisory municipal officials . . . . However, a policy or custom may only be inferred if the acts or omissions of a municipality's supervisory officials are serious enough to amount to 'deliberate indifference' to the constitutional rights of a plaintiff." Poulsen v. City of North Tonawanda, 811 F. Supp. 884, 896 (W.D.N.Y. 1993) (citing Villante v. Dep't of Corrections, 786 F.2d 516, 519 (2d Cir. 1986)); see also Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The inference that such a policy existed may arise from 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display deliberate indifference to the constitutional rights of those within its jurisdiction.'" ) (quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119,123 (2d Cir. 1991)).

Furthermore, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury.  A single incident alleged in a complaint, especially if it involved only actors below the

policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." Dwares, 985 F.2d at 100.

Here, plaintiff has not presented evidence that creates a question of fact for a jury that there was more than the single incident of his arrest or that anyone at the policymaking level was involved in his arrest.  Therefore, the plaintiff has failed to allege facts sufficient for his claims of municipal liability for failure to train, supervise and unconstitutional custom or policy to survive this motion.

The City of Amsterdam's motion for summary judgment must be granted.

### G.  Pendent State Law Claims

Finally, defendants seek summary judgment as to plaintiffs' pendent state law claims. Defendants argue that the district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all the claims over which it has original jurisdiction.  See Federman v. Empire Fire & Marine Ins. Co., 597 F.2d 798, 809 (2d Cir. 1979).

Because the § 1983 causes of action against Officers Santiago and Palmieri over which the district court had original jurisdiction are dismissed, it is appropriate to exercise discretion and dismiss all the pendent state law claims against them as well.  In any event, the state law claims against these defendants have no merit.

However, because the § 1983 claims against Officers Fuhs and Culick have not been dismissed, the interests of judicial economy make it appropriate to retain supplemental jurisdiction over the pendent state law claims against them.

Alternatively, Officers Fuhs and Culick argue that summary judgment of the state law claims of false arrest and malicious prosecution is warranted on the same substantive grounds as the § 1983 claims.  However, as previously discussed, the plaintiff has presented facts

- 17 -

sufficient to survive a motion for summary judgment on those claims against Officers Fuhs and Culick.  Therefore, summary judgement must be denied for the pendent state law claims for false arrest and malicious prosecution against Officers Fuhs and Culick.

## IV.  **CONCLUSION**

On the First cause of action, plaintiff has not raised a triable question fact as to whether his right to due process was violated and that part of the claim will be dismissed. Additionally, on the First cause of action, he fails to set forth allegations that support the inference that Officers Santiago and Palmieri falsely arrested or maliciously prosecuted him. Therefore, his First cause of action claims for unlawful seizure, false arrest, unlawful imprisonment and malicious prosecution are dismissed as to these defendants.  However, because he has raised  triable questions of fact as to whether his arrest was procured without probable cause, his First cause of action claims for unlawful seizure, false arrest, unlawful imprisonment, and malicious prosecution against Officers Fuhs and Culick survive their motion for summary judgment.  Defendants' claim of qualified immunity on th First cause of action, similarly, is predicated on probable cause and raises a triable question of fact not appropriately determined on summary judgment.  Plaintiffs Second, Third, and Fourth cases of action against the City of Amsterdam for municipal liability are not supported by any reasonable inference arising from the facts presented and are dismissed.  Because the federal claims against Officers Santiago and Palmieri are dismissed, supplemental jurisdiction is declined over the Fifth, Sixth, and Seventh New York state law causes of action against them. However, supplemental jurisdiction will be retained as to the Fifth, Sixth and Seventh causes of action against Officers Fuhs and Culick.

Accordingly, it is

ORDERED that

1.  Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2.  Plaintiffs' cause of action for violation of due process is DISMISSED;

3.  The <u>Second</u>, <u>Third</u>, and <u>Fourth</u> causes of action against the city of Amsterdam are DISMISSED;

4.  The <u>First</u>, <u>Fifth</u>, <u>Sixth</u>, and <u>Seventh</u> causes of action against the defendants Ariel Santiago and Joseph Palmieri are DISMISSED;

5.  The <u>First</u>, <u>Fifth</u>, <u>Sixth</u> and <u>Seventh</u> causes of action remain for trial as to Defendants Gregory J. Culick and Owen Fuhs.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 19, 2006
        Utica, New York.

_____
_____